**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JAMARRO L. WRIGHT,** | ) |
| Petitioner, | ) ) ) |
| vs. | )  Case No. 06-CV-542-JHP-FHM |
| **JUSTIN JONES, Director DOC,** | ) ) ) |
| Respondent. | ) ) |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state inmate and appears *pro se*. Respondent filed a response (Dkt. # 7) to the petition and provided the state court record (Dkt. # 8) for the Court's use in resolving the claims raised in the petition.[1] Petitioner filed a reply (Dkt. # 10) to the response. For the reasons discussed below, the Court finds the petition for writ of habeas corpus should be denied.

*BACKGROUND*

During the evening hours of October 23, 2002, masked intruders kicked in the front door of Jean Ann Wintle's home located in Tulsa, Oklahoma. Ms. Wintle and her boyfriend, David Johnson, were watching television at the time. The intruders, armed with at least one firearm, demanded money. They bound the hands and feet of Ms. Wintle and Mr. Johnson with duct tape. They also placed duct tape over the victims' eyes and mouths. Ms. Wintle was hit in the head and

---

[1] The record provided by Respondent for this case consists of both volumes of the Original Record for Tulsa County District Court, Case No. CF-2002-5478. Respondent also requests to incorporate by reference Volumes III-VI of the jury trial transcripts as filed in N.D. Okla. Case No. 06-CV-449-JHP-PJC, the habeas corpus action filed by Petitioner's co-defendant, Christopher Driver. See Dkt. # 8. Based on Respondent's request, the Court incorporates by reference the trial transcripts provided in N.D. Okla. Case No. 06-CV-449-JHP-PJC.

knocked unconscious. Mr. Johnson sustained a stab wound and was also hit in the head. The intruders took Mr. Wintle's purse, Mr. Johnson's wallet containing $1,500.00, and additional cash. After ransacking the house looking for money, the intruders left the scene. Mr. Johnson was able to crawl to the kitchen, find a knife, and free himself from his bindings. He called 911. After receipt of the 911 call, Tulsa police officers on patrol observed a car traveling at a high rate of speed. The police officers gave chase. After traveling 2 ½ miles at approximately 100 m.p.h., the car was unable to negotiate a turn and crashed into a house. The police observed three (3) individuals exiting the vehicle after the crash. All three were apprehended and later identified as Christopher Driver, Jermaine Wright, and Jamarro Wright. Jermaine Wright was identified as the driver of the car. Police officers recovered a backpack from the back seat of the crashed car. Inside the backpack were three (3) black ski masks, two (2) handguns, and Ms. Wintle's purse. They also found Mr. Johnson's wallet containing $1,500.00 cash on the front floorboard of the crashed car. In the trunk of the car, police recovered a baggie containing crack cocaine along with Jermaine Wright's driver's license.

As a result of those events, Petitioner Jamarro Wright was charged and tried jointly with his co-defendants, Jermaine Wright and Christopher Driver, in Tulsa County District Court, Case No. CF-2002-5478. At the conclusion of a bifurcated jury trial, Petitioner was convicted of Robbery with Firearms (Count 1), and Possession of a Firearm After Former Felony Conviction (Count 4).[2] As to Petitioner Jamarro Wright, the jury recommended sentences of seventy (70) years

---

[2] Counts 2 and 3 were charged against Petitioner's brother, Jermaine Wright. Petitioner was also charged with two (2) counts of Assault and Battery and one (1) count of Resisting Arrest. All three of those charges were dismissed, either at preliminary hearing or at trial.

imprisonment and a fine of $10,000 on Count 1, and ten (10) years imprisonment on Count 4.[3] The trial court judge sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. At trial, Petitioner and his brother, Jermaine Wright, were represented by attorney Jeffrey Fischer.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals ("OCCA"). On direct appeal, Petitioner, represented by attorney Mark P. Hoover, raised the following four (4) propositions of error:

I: Because the trial court erroneously refused to excuse a potential juror for cause, Appellant was forced to use a peremptory challenge which would otherwise have been used by the defense to remove an undesirable juror.

II: The prosecutor improperly commented on Appellant's right to remain silent.

III: The prosecutor's invocation of societal alarm deprived Appellant of a fair trial and resulted in the jury imposing excessive sentences.

IV: Because the State failed to introduce sufficient evidence for a rational jury to find Appellant guilty of robbery, this court must reverse his conviction.

(Dkt. # 7, Ex. 1). On July 15, 2005, in Case No. F-2003-1339, the OCCA found no merit to Petitioner's claims. For that reason, the state appellate court affirmed the Judgments and Sentences of the trial court. Dkt. # 7, Ex. 3. Petitioner did not file a petition for writ of *certiorari* at the United States Supreme Court nor did he seek post-conviction relief in the state courts.

---

[3]Petitioner's co-defendants received sentences as follows: Christopher Driver was sentenced to sixty (60) years imprisonment and fined $10,000 on Count 1, and ten (10) years imprisonment on Count 4. Jermaine Wright, who had two (2) prior felony convictions, was sentenced to forty (40) years imprisonment and fined $10,000 on Count 1, and forty (40) years imprisonment on Count 4. In addition, Jermaine Wright was also charged with and convicted of Attempting to Elude Police (Count 2) and Possession of a Controlled Drug (Count 3). He was sentenced to 180 days and fined $2,000 on Count 2, and to ten (10) years imprisonment and fined $5,000 on Count 3.

On October 3, 2006, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Petitioner identifies four (4) grounds for relief, as follows:

Ground 1: Petitioner's Sixth and Fourteenth Amendment guarantees to a fair trial by an impartial jury were violated.

Ground 2: The prosecutor improperly commented on Petitioner's right to remain silent and violated the Fifth Amendment privilege against self incrimination and the Fourteenth Amend. guarantee of Due Process.

Ground 3: The prosecutor invoked "Societal Alarm" to achieve an excessive sentence recommendation by the jury in a bifurcated trial in violation of the Sixth and Fourteenth Amendments of the U.S. Const. which guarantees a fair trial and Due Process.

Ground 4: There was not sufficient evidence for a rational jury to find Appellant guilty of Robbery and without that evidence Petitioner was convicted in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution.

(Dkt. # 1). Respondent filed a response (Dkt. # 7) to the petition and asserts that under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief.

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that Petitioner's claims raised in the petition were presented to the OCCA on direct appeal and are exhausted.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA**

When a state court has adjudicated a constitutional claim, a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Bell v. Cone, 535 U.S. 685, 694 (2002); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). In this case, the OCCA adjudicated Petitioner's claims on direct appeal. Therefore, the claims shall be reviewed pursuant to § 2254(d).

***1. Trial court's improper refusal to excuse a potential juror for cause (ground 1)***

As his first proposition of error, Petitioner asserts that because the trial court improperly refused to excuse a potential juror for cause, he was forced to use one of his peremptory challenges that would have otherwise been used to excuse a different undesirable juror. The potential juror sought to be excused for cause was a police officer for the City of Glenpool. In rejecting this claim on direct appeal, the OCCA cited Matthews v. State, 45 P.3d 907, 915 (Okla. Crim. App. 2002), and ruled as follows:

> With respect to proposition one, we find the police officer was excused by use of a peremptory challenge, the trial judge did not abuse his discretion by refusing to excuse the officer on the basis of bias, and the record is unclear whether the officer had custody of prisoners. Also, Appellant failed to establish prejudice by showing he was forced, over objection, to accept an unacceptable juror.

(Dkt. # 7, Ex. 3).

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process guarantee a criminal defendant in state court an "impartial jury." Ristaino

v. Ross, 424 U.S. 589, 595 n.6 (1976) (citations omitted); Ross v. Oklahoma, 487 U.S. 81, 85 (1988). "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." Lockhart v. McCree, 476 U.S. 162, 184 (1986). In Ross v. Oklahoma, 487 U.S. 81 (1988), the Supreme Court specifically rejected the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. Id. at 88. "[P]eremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Id. (citations omitted). Thus, any claim that the jury was impartial must focus on the jurors who ultimately sat. Id. at 86.

In the petition, Petitioner never suggests that any of the 12 jurors was not impartial. On direct appeal, Petitioner argued that one of the jurors, Mr. Roberds, would have been excused had defendants been afforded an additional peremptory challenge. However, he never stated that Mr. Roberds was biased or in any way denied his right to an impartial jury. Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to or an unreasonable application of Supreme Court law. His request for habeas corpus relief on this claim shall be denied.

### 2. Prosecutorial misconduct (grounds 2 and 3)

As his second and third grounds of error, Petitioner alleges that the prosecutor asked improper questions and made improper comments. In ground 2, he complains that during the first stage proceeding, the prosecutor improperly commented on his right to remain silent during direct

examination of a Tulsa police officer. The record reflects that during the prosecutor's direct examination of Detective Stephen St. Clair, the following exchange took place:

> Q: Did you ever have an opportunity to interview any suspects?
>
> A: I briefly met the suspects, and they did not want to talk to me.
>
> Q: Okay. Do you recall who they were?
>
> A: Yes, sir, I do.
>
> Q: And who were they?
>
> A: Chris Driver, Jermaine Wright, and Jamarro Wright.
>
> Q: Okay. Look around the courtroom, and do you see those individuals in the courtroom today?
>
> A: Yes, sir, I do.
>
> Q: And can you tell us where they are sitting, and what they are wearing?
>
> A: It is the three men sitting at the defense table. One is wearing a gray shirt; the other is in a white shirt; the other is in a dark shirt.
>
> Q: And you are not sure at this time which one of those individuals is which, but are these the three individuals you spoke with that night, or tried to speak to?
>
> A: It looks like the same guys.

(Tr. Trans. Vol. III at 626-27). Defense counsel lodged no objection to the line of questioning. On direct appeal, the OCCA cited Simpson v. State, 876 P.2d 690, 695-96 (Okla. Crim. App. 1994); and Dungan v. State, 651 P.2d 1064, 1065 (Okla. Crim. App. 1982), and found "no plain error in relation to the prosecutor's comments." (Dkt. # 7, Ex. 3).

In Doyle v. Ohio, 426 U.S. 610 (1976), the Supreme Court held a prosecutor deprives a criminal defendant of due process by making improper comments about the defendant's post-

7

Miranda[4] silence. Doyle, 426 U.S. at 611, 619.  Tenth Circuit precedent provides that "[t]he state may not use a defendant's exercise of his right to remain silent to obtain his conviction." Hamilton v. Mullin, 436 F.3d 1181, 1187 (10th Cir. 2006) (quoting Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995)).  "[T]he question is 'whether the language used [by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent.'" Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir. 2001) (quoting Pickens v. Gibson, 206 F.3d 988, 998 (10th Cir. 2000)).  Any error in permitting the prosecutor to comment upon the defendant's right to silence is subject to a harmless error analysis. See Brecht v. Abrahamson, 507 U.S. 619, 628-29 (1993).

In this case, when viewed in context, the questions do not suggest that the prosecutor intended to infer Petitioner's guilt from his post-arrest silence during the examination of Detective St. Clair. The questions did not generate responses that were direct or unequivocal comment as to Petitioner's invocation of his right to remain silent. Instead, the purpose of the questioning was to obtain identification of the defendants as the suspects who were brought to the detective division after the high-speed chase and car crash. Furthermore, the jury may have inferred that the defendants did not want to speak to Detective St. Clair in particular, or that other things were occurring at the time. The Court agrees with the OCCA's conclusion that no plain error resulted from the prosecutor's questions.[5]  Petitioner is not entitled to habeas relief on ground 2 of the petition.

---

[4]Miranda v. Arizona, 384 U.S. 436 (1966).

[5]In Thornburg v. Mullin,, 422 F.3d 1113, 1125 (10th Cir. 2005), the Tenth Circuit found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due-process test, which requires reversal when error "so infused the trial with unfairness as to deny due process of law." Id. (quoting Estelle v. McGuire, 502 U.S. 62, 75 (1991)).

In ground 3, Petitioner complains that two (2) times during second stage closing argument, the prosecutor improperly invoked "societal alarm" resulting in an excessive sentence. The first instance complained of by Petitioner involved general comments about the jury's role in society and the purpose of the criminal justice system. See Tr. Trans. Vol. VI at 1217-18. The second comment occurred when the prosecutor stated: "I ask you – now, I told you during the first closing the question to ask yourself is when do you want to invite [the co-defendants] back into society?" See id. at 1225. This comment drew an objection from defense counsel. The trial court judge admonished the jury to "avoid any instinct toward being inflamed." Id. On direct appeal, the OCCA rejected this claim, citing Williams v. State, 22 P.3d 702, 711 (Okla. Crim. App. 2001), and finding that "the error was sufficiently cured by the trial judge's admonition." (Dkt. # 7, Ex. 3).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

Petitioner is not entitled to habeas corpus relief on this claim. As to the first allegedly improper comment identified by Petitioner in ground 3, the Court finds it was not error for the prosecutor to focus on the jury's duty to serve and render a verdict based upon the evidence or

9

acknowledge to the jury the difficulty of their task and ask them seriously to consider the punishment options available. See, e.g., Johnson v. Mullin, 505 F.3d 1128, 1158 (10th Cir. 2007). The prosecutor's comments were not improper and prejudicial as playing on societal alarm or as inflaming the passions or prejudices of the jury. Instead, the record reflects that the comments focused on the duty of the jurors to serve and render a verdict based upon the evidence.

As to the second allegedly improper comment identified in ground 3, the Court finds Petitioner has failed to demonstrate that the OCCA's adjudication was contrary to, or an unreasonable application of federal law as determined by the Supreme Court. Even if the comment could be characterized as an appeal to societal alarm, it does not rise to the level of a due process violation. "While improper appeals to societal alarm and requests for vengeance for the community to set an example are unwarranted, they are also not the type of comments that the Supreme Court has suggested might amount to a due process violation." Brecheen v. Reynolds, 41 F.3d 1343, 1356 (10th Cir. 1994) (quotation omitted); see also Jones v. Gibson, 206 F.3d 946, 959 (10th Cir. 2000). Additionally, because the trial court judge gave a curative admonishment, and in light of the ample evidence in the record of Petitioner's guilt, see Fero, 39 F.3d at 1474, the Court finds that the prosecutor's comments did not result in a deprivation of due process. Lastly, because the jury imposed sentences within the range of sentencing allowed by Oklahoma law, the Court cannot find that the prosecutor's comments contributed to excessive sentences. Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

### *3. Insufficient evidence (ground 4)*

As his fourth proposition of error, Petitioner argues that the State presented insufficient evidence to support his conviction for Robbery with Firearms. The OCCA rejected this claim on

direct appeal, citing Spuehler v. State, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985), and finding as follows:

> . . . after viewing the evidence in the light most favorable to the State and accepting all reasonable inferences and credibility choices that tend to support the jury's verdict, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.

(Dkt. # 7, Ex. 3).

As stated above, a writ of habeas corpus will not be issued on a state claim adjudicated on the merits unless the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001); see also Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004). Under either standard, Petitioner's claim in this case fails.

In examining Petitioner's sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). In evaluating the evidence presented at trial, the Court does not weigh

conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

This Court looks to Oklahoma law for the substantive elements of Robbery with Firearms applicable to the sufficiency of the evidence standard. See, e.g., Spears, 343 F.3d at 1238; see also Jackson, 443 U.S. at 324 n.16. At the time of Petitioner's offenses, Oklahoma law provided the elements of Robbery with Firearms, as follows: first, wrongful; second, taking; third, carrying away; fourth, personal property; fifth of another; sixth, from the person or immediate presence of another; seventh, by force/fear; eighth, through the use of a firearm. Okla. Stat. tit. 21, §§ 791, 801; OUJI-CR 2d 4-1444.

In this case, Petitioner relies on an alibi defense linked to an alleged 3-hour gap between the time of the robbery as recalled by one of the victims and the time of the high speed car chase and

crash resulting recovery of the stolen property and his apprehension.[6] Upon consideration of the collective inferences to be drawn from the evidence as a whole, however, the apparent gap in time does not give rise to a reasonable doubt as to guilt.  The jury heard testimony from both victims that they suffered significant injuries during the robbery. Ms. Wintle testified that she was knocked completely unconscious approximately five (5) minutes after the break-in and did not regain consciousness until about 2:30 a.m. See Tr. Trans. Vol. III at 552-53. Mr. Johnson testified that he too was hit in the head and that he was also stabbed in the arm resulting in substantial loss of blood. Id. 592-93. Several witnesses testified that there was blood everywhere in the house. Id. at 478, 557. Mr. Johnson described how he crawled to the kitchen to cut himself loose from the duct tape binding his arms and legs.  Id. at 593.  According to Ms. Wintle, the robbers completely tore up and ransacked her house, causing extensive damage. Id. at 549-51, 576. Viewing the evidence as a whole, the Court finds that the jury could have reasonably discounted the significance of the time gap between the time of the break-in as recalled by Ms. Wintle and the car crash. Furthermore, after the high-speed car chase and resulting crash, Petitioner and his co-defendants were found in possession of a backpack containing black ski masks, two (2) loaded handguns, and Ms. Wintle's purse. Id. at 662-63, 748-79. Mr. Johnson's wallet containing $1,500 was also found in the crashed car occupied by Petitioner and his co-defendants. Id. at 663, 748.  The Court concludes that the evidence, when viewed in a light most favorable to the State, was sufficient to allow the jury as a rational trier of fact to have found the essential elements of Robbery with Firearms beyond a

---

[6] Ms. Wintle testified that Mr. Johnson arrived at her house at about 9:30 p.m. and that they watched television for about 10-15 minutes before the door was kicked in. See Tr. Trans. at 539-42. In contrast, Mr. Johnson testified that he was at Ms. Wintle's house for "a couple of hours" before the door was kicked in. Id. at 597.  The high speed car chase began at 12:20 a.m. Id. at 681.

reasonable doubt. Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has not clearly settled whether sufficiency of the evidence on habeas review presents a question of law or fact). The Court finds habeas corpus relief shall be denied on this claim.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.
2. A separate Judgment shall be entered in this case.

DATED THIS 20th day of August 2009.

James H. Payne
United States District Judge
Northern District of Oklahoma